# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| MARVEN MacLEAN § | |
|    Plaintiff, § | |
| § | |
| § | |
| v. § | Case No. 4:08-cv-59 |
| § | |
| § | |
| § | |
| JOHN D. McCARROLL, D.V.M., § | |
| EQUINE MEDICAL ASSOCIATES, P.A., § | |
|    Defendants. § | |

## MEMORANDUM OPINION & ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the court are the following:

1. Defendants' Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment (de # 54);

2. Plaintiff's Response to Defendants' Motion for Summary Judgment (de #57); and

3. Defendants' Reply Brief in Support of Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment (de # 59).

Having considered the Motion, the responsive briefing, and the relevant legal principles, the court is of the opinion that the Defendants' Motion for Summary Judgment should be DENIED IN PART and GRANTED IN PART.

## I. BACKGROUND

This civil action arises out of a pre-purchase examination of a quarter horse filly, Ally McBlaze, by defendants, John McCarroll, D.V.M. ("Dr. McCarroll") and Equine Medical Associates, P.A. on March 9, 2006. The pre-purchase examination was performed at the request of Plaintiff, Marven MacLean ("MacLean"). During the pre-purchase examination, various tests were performed to check the horse for signs of clinical lameness. McCarroll "(1) took and examined

anteroposterior, dorsoventral and lateral radiographic views of the filly's front feet; (2) performed hooftesting on the perimeter of each foot, the navicular points of each foot and the heel of each foot; (3) performed flexion tests; and (4) examined the filly on the lounge line at a trot and lope going in both directions for a period of at least ten minutes." (de # 54,1-2.) The results of this examination were interpreted by Dr. McCarroll as "normal." (de # 57, 2.) MacLean did not pursue any other pre-purchase examinations of Ally McBlaze by other veterinarians. MacLean purchased Ally McBlaze on March 17, 2006 from Joan Schroeder, Robbie Schroeder, and Schroeder Ranch in Gainesville, Texas for $58,500 based on Dr. McCarroll's evaluation.

Ally McBlaze was shipped to MacLean's facility on Prince Edward Island, Canada, and upon arrival, the horse showed difficulty walking. At the request of MacLean, the pre-purchase examination results and Dr. McCarroll's evaluation were mailed to veterinarians in Canada to be further reviewed. A veterinarian affiliated with the Atlantic Veterinarian College found that the results of the pre-purchase examination "x-rays of the forefeet showed increased synovial invaginations and remodeling of the navicular bones" and that the "films clearly demonstrated the same degenerative changes seen on subsequent films." (*Id.* at 3.) MacLean claims that the degenerative conditions were present at the time Dr. McCarroll performed his examination and that he should have observed such conditions. MacLean sued the defendants on theories of veterinary negligence and misrepresentation under Texas law claiming that but for the negligence and misrepresentations made by Dr. McCarroll, he would not have purchased the lame horse, Ally McBlaze. MacLean is suing Equine Medical Associates, P.A. based on the theory of respondeat superior.

On September 18, 2006, MacLean submitted a formal complaint to the Texas Board of

Veterinary Medical Examiners in reference to Dr. McCarroll's handling of the Ally McBlaze examination. (de # 54, Ex. A.) On April 26, 2007, the Texas Board of Veterinary Medical Examiners sent a letter to Dr. McCarroll notifying him that the Board "could not substantiate any violation of the Veterinary Licensing Act or any of the Rules of Professional Conduct." (de # 54, Ex. B.)

In their Motion, the Defendants argue that the current claim is barred by the doctrine of res judicata. The Defendants base their argument on the aforementioned finding by the Texas Board of Veterinary Examiners. The Defendants alternatively move for partial summary judgment regarding MacLean's request for damages. MacLean argues that the formal complaint filed with the Texas Board of Veterinary Examiners does not bar the present case because there was not a "a prior final judgment on the merits by a court of competent jurisdiction" and the current case is not "a second action based on the same claims as were raised or could have been raised in the first action." *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008) (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)). Furthermore, MacLean contends that the damages being sought are all lawfully attainable.

## II. LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Id*. at 255. The substantive law identifies which facts are material. *Id*. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *accord Anderson*, 477 U.S. at 257. In order to create a genuine issue, the evidence "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION & ANALYSIS

*A.     Motion for Summary Judgment*

Res judicata prohibits the relitigation of finally adjudicated claims between the same parties. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008) (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). Res judicata prevents a party from receiving an unfavorable decision and relitigating the matter in order to receive a more favorable result. *Id*. The elements of res judicata are well established: "(1) a prior final judgment on the merits by a court of

competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Id.* (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)).

"When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *Id.* at 86-87 (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421 (1966)). The purpose of the Texas Board of Veterinary Medical Examiners, as provided by the Texas legislature, is to "protect the public interest . . . and is the primary means of licensing, regulating, and disciplining veterinarians." 22 TEX. ADMIN. CODE § 575.8(d)(1) (2009). The following are the disciplinary powers of the Texas Board of Veterinary Medical Examiners: "(1) refuse to examine an applicant or to issue or renew a license; (2) revoke or suspend a license; (3) place on probation a license holder or person whose license has been suspended; (4) reprimand a license holder; or (5) impose an administrative penalty." TEX. OCC. CODE ANN. § 801.401(a) (Vernon 2009).

Both parties cite *Igal* as controlling. In *Igal*, the plaintiff filed a wage claim with the Texas Workforce Commission ("TWC"). *Igal*, 250 S.W.3d at 81. The TWC denied the plaintiff's claim and did not allow for the recovery of wages, and following this determination the plaintiff attempted to pursue her claim against the same defendants in state court. *Id.* The issue in *Igal* was whether or not the final adjudication by the TWC barred the plaintiff from pursuing the same claim in state court under the doctrine of res judicata. *Id.* The Texas Supreme Court decided that when a wage claim is finally adjudicated by the TWC, the claimant is barred by the doctrine of res judicata "from later filing a lawsuit for the same damages in a Texas court of law." *Id.* The court found that the

TWC acted in a judicial capacity and the intent of the Texas Legislature was that the TWC be the final word on this subject matter. The court found that the TWC acted in a judicial capacity because the TWC held hearings, including appearances by the parties' counsel and testifying witnesses. *See id*. Furthermore, the court found that "TWC's procedures are designed to resolve claims expeditiously and inexpensively, and it uses abbreviated mechanisms of an adversarial judicial process to adjudicate wage claims." *Id.* at 82.

The main factual distinction between *Igal* and the present case is that in *Igal*, "the parties had an adequate opportunity to litigate their claims through an adversarial process in which TWC finally decided disputed issues of fact." *See id.* at 87. Furthermore, it was established that the legislature intended for the TWC to offer an "alternate means to the same remedy," and therefore, once a judgment was issued, it could not be relitigated in the court system. *Id*. at 88. In the present case, MacLean filed a complaint with the Texas Board of Veterinary Medical Examiners, and seven months later Dr. McCarroll received a notification stating that the Board was closing the case after finding that no violation of the Veterinary Licensing Act or any of the Rules of Professional Conduct had occurred.

The court finds that the procedure utilized by the Texas Board of Veterinary Medical Examiners was not an adversarial judicial process. *See id*. at 82. The procedure utilized was not analogous to the judicial process in that apparently the board did not hold any hearings in which the parties were able to be heard on the issues; the parties were not able to present further evidence; the board did not issue or enforce subpoenas for witnesses and documents, or even question the parties to clarify any outstanding issues. *See id*. In addition to not conducting a proceeding even remotely similar to that of a judicial proceeding, the Texas Board of Veterinary Medical Examiners is without

jurisdiction to grant the monetary relief now sought by MacLean. *See* TEX. OCC. CODE ANN. § 801.401(a). The Board can only impose disciplinary penalties on a veterinary professional who violates a provision of Section 801.402. It cannot award monetary damages to a party who submits a complaint of malfeasance by a veterinarian. *See id*. at 801.401(a). In *Igal*, the complaining party could bring the exact same claim to the TWC or to the courts for a trial on the merits, whereas in this case, a claim for money damages is only available in the court system. *See Igal,* 250 S.W.3d at 82. The decision of the Texas Board of Veterinary Medical Examiners was thus not a "final judgment on the merits by a court of competent jurisdiction." *Igal*, 250 S.W.3d at 86. The court, therefore, finds that res judicata principles do not preclude MacLean from bringing his claim.

B.  *Motion for Partial Summary Judgment*

The Defendants' alternatively move for partial summary judgment regarding MacLean's request for damages. The purpose of damages is to provide "fair, reasonable, and proper compensation for the injury inflicted as a proximate result" of the tortious act. *Pasadena State Bank v. Isaac*, 228 S.W.2d 127, 128 (Tex. 1950). The general calculation "for measuring damage to personal property is the difference in its market value immediately before and immediately after the injury, at the place where the damage occurred." *Thomas v. Oldham*, 895 S.W.2d 352, 359 (Tex. 1995) (citing *Pasadena State Bank*, 228 S.W.2d at 128). Although this is the general rule, there are exceptions that are to be analyzed on a case by case basis. *See id*.

This situation is unique in that the horse was not injured by a tortious act; rather, MacLean was allegedly injured by Dr. McCarroll's allegedly tortious performance of the pre-purchase examination. Therefore, this case does not fit perfectly into the general rule as stated in *Thomas*. *See Thomas*, 895 S.W.2d at 359. However, MacLean would be entitled to damages that would fairly

compensate him for purchasing a lame horse. *See Pasadena State Bank*, 228 S.W.2d at 128. In this case, it would not fairly compensate MacLean to allow only the recovery of the difference before and after the injury, because the preexisting nature of the horse's condition would render the value of the horse before and after the pre-purchase examination as exactly the same. The court finds that MacLean would be entitled to the difference in the value of the horse he intended to buy—the horse that Dr. McCarroll represented MacLean was purchasing—and the value of the horse he actually received.

Defendants argue that all out of pocket and incidental damages could have been avoided by selling the horse. Indeed, Texas law does impose a duty to mitigate damages. *Gunn Infiniti v. O'Byrne*, 996 S.W.2d 854, 857 (Tex. 1999). However, any failure to mitigate damages by the plaintiffs is a fact issue for the jury.

The Defendants also move for partial summary judgment with regard to MacLean's request for damages stemming from the lack of the horse's breeding potential. The court finds that damages based on breeding potential are speculative and may not be recovered. Texas law does not allow recovery for potential unborn foal, even when the mare is in foal. *Winingham v. Anheuser-Busch, Inc.*, 859 F.Supp. 1019, 1021 (N.D. Tex. 1994); *Nationwide Horse Carriers, Inc. v. Johnston*, 519 S.W.2d 163, 168 (Tex. App.—Houston [1st Dist.] 1974) (citing *Tex. & Pac. Ry. Co. v. Randle*, 18 Tex. Civ. App. 348, 352, 44 S.W. 603, 605 (Tex. Civ. App.—Dallas 1898, no writ)). The court finds the current case to be even more speculative than the facts in either *Johnston* or *Randle* because Ally McBlaze was not pregnant. *See Randle*, 44 S.W. at 605. It is obvious to the court that a horse with breeding potential is worth more than a horse without breeding potential, but this is not enough. There is no way to determine with specificity the value of breeding potential because the fact-finder

would merely be guessing as to how other breeders would have viewed Ally McBlaze in the future. Damages that "are too remote, too uncertain, or purely conjectural . . . cannot be recovered." *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997). Furthermore, the court rejects the unsupported claim that modern technology has made the task of calculating breeding potential damages concrete.

### III.  CONCLUSION

Based on the foregoing, the court is of the opinion that MacLean's claim is not barred by the doctrine of res judicata. However, fact issues remain for jury resolution as to MacLean's damages, if any, except with respect to the horse's future breeding potential. Therefore, the Defendants' Motion for Summary Judgment (de # 54) should be, and hereby is, DENIED IN PART and GRANTED IN PART.

IT IS SO ORDERED.

**SIGNED this the 23rd day of June, 2009.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE